

# NUMBER 13-25-00040-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANTONIO VILLEDA AND
ANTONIO VILLEDA LAW GROUP,                               **Appellants,**

**v.**

RENE ANGEL HERNANDEZ
AND NOE LAURO HERNANDEZ,                                  **Appellees.**

## ON APPEAL FROM THE PROBATE COURT NO. 1
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

This is an appeal from the denial of a motion to compel arbitration based on an arbitration clause contained in a will. Appellees Rene Angel Hernandez and Noe Lauro Hernandez brought the underlying action against appellants Antonio Villeda and Antonio Villeda Law Group, alleging legal malpractice and breach of fiduciary duty in relation to

Villeda's representation of Noe as independent executor. By a single issue, appellants argue that the trial court erred by denying their motion to compel arbitration. We affirm.

## I.     BACKGROUND

Benito and Angelita Hernandez were married, and Villeda prepared and drafted their wills. In his will, Benito made specific bequests of real property to his four sons, Rene, Noe, Ricardo, and Joel Hernandez. Specifically, Benito devised Lot 389 to Noe, and Lot 390 to Rene, Ricardo, and Joel "in equal shares." The will also stated that "if [Lot 390] is ever partitioned by the heirs, the portion going to [Rene] shall be the section that borders along Lot 389."

Benito passed away on April 11, 2020. Villeda filed an application to probate Benito's will, and Noe was appointed the independent executor in accordance with the will. Villeda drafted and filed a special warranty deed on Noe's behalf conveying the estate's property in accordance with the terms of the will. However, Villeda did not include the partition language from the will in the special warranty deed. On January 16, 2023, Rene obtained counsel and sent Villeda a letter demanding correction of the special warranty deed to conform to the will's terms. Villeda did not respond to this demand.

In February 2023, Rene filed a petition in intervention in the probate court seeking to reform the special warranty deed, and he submitted a proposed new deed. Villeda responded on behalf of Noe stating that Rene's proposed corrected deed included additional language beyond what was stated in the will.

In March 2023, Ricardo and Joel filed a petition in the district court seeking to partition Lot 390 pursuant to the Uniform Partition of Heirs' Property Act (the Act). The district court did not partition the property pursuant to the Act but instead awarded Rene

2

the eastern portion of Lot 390 in accordance with the terms of the will. Ricardo and Joel appealed to this Court, and we affirmed. *See Hernandez v. Hernandez*, No. 13-23-00527-CV, 2025 WL 2726534, at *1 (Tex. App.—Corpus Christi–Edinburg Sept. 25, 2025, no pet. h.) (mem. op.).

In April 2023, Noe responded to Rene's request for discovery, and he sent his discovery responses to Villeda. According to Noe, Villeda changed Noe's responses without communication or Noe's approval, so Noe terminated the attorney-client relationship with Villeda.

In December 2023, Noe filed suit against Villeda alleging negligence and breach of fiduciary duty. Noe accused Villeda of negligently drafting the special warranty deed, failing to communicate Rene's offer to Noe to correct the special warranty deed, failing to take corrective action to correct the special warranty deed after Noe requested that he do so, and changing Noe's responses to Rene's discovery request without discussing the same with Noe or obtaining Noe's approval. In January 2025, Rene filed similar allegations against Villeda. Villeda filed a motion to compel arbitration of these claims, or, in the alternative, a motion to abate the malpractice claims. Following a hearing where Noe and Rene opposed Villeda's motion to compel, the probate court denied the motion. This appeal followed.

## II.    STANDARD OF REVIEW

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). "Once a valid arbitration agreement is established, a 'strong

3

presumption favoring arbitration arises, and we resolve doubts as to the agreement's scope in favor of arbitration." *Rachal*, 403 S.W.3d at 850.

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry*, 551 S.W.3d at 115; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115; *Rachal,* 403 S.W.3d at 843. Whether an arbitration agreement is enforceable is a legal determination reviewed de novo. *Rachal*, 403 S.W.3d at 843.

A will is a unilateral instrument; thus, courts may not compel arbitration based on an arbitration clause therein "unless the will is 'supported by the mutual assent required to render the [will] an agreement and the arbitration provision valid.'" *Ali v. Smith*, 554 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2018, no pet.). An arbitration provision in a will becomes enforceable when a promisee accepts by actual performance. *Hollingsworth v. Swales*, 717 S.W.3d 655, 658 (Tex. App.—Waco 2025, pet. denied).

### III.    THE ARBITRATION CLAUSE

The arbitration clause that Villeda drafted and included in Benito's will recites the following:

> I direct that my Executor, my Trustee, my Beneficiaries (and purported Beneficiaries), and all other parties interested or claiming an interest in my estate or in any trust created or arising under my Will, or in the Statutory Durable Power of Attorney, the Durable Power of Attorney for Health Care, the Directive to Physicians or the Agreement dated August 9, 2018 regarding contractual wills executed by me, (collectively[,] "Estate Planning Documents") shall attempt in good faith to promptly resolve any dispute arising out of, incident to, or otherwise appertaining to the Estate Planning Documents or the administration, distribution and/or settlement of my estate or of such powers of attorney or directive to physicians' ("Dispute"), by negotiation between such affected parties. All negotiations pursuant to this provision of my Will, shall be and remain confidential and shall be deemed

4

to be compromise and settlement negotiations for purposes of applicable rules of evidence. If such Dispute has not been resolved by negotiations between the affected parties within (30) days after such negotiations are commenced, then I direct that such Dispute shall be settled by binding arbitration administered under Chapter 171, General Arbitration, of the Texas Civil Practices and Remedies Code, as amended (hereinafter referred to as the "Act"). The affected parties shall agree on an arbiter residing in Hidalgo County, Texas. If the affected parties cannot agree on such arbiter, a suit shall be filed with the Probate Court in Hidalgo County solely to appoint an arbiter residing in Hidalgo County, Texas to arbitrate such dispute(s). The Act shall be modified to be consistent to the provisions expressed in this Article and my desire to have one arbiter resolve all disputes between affected parties.

Lastly, my Executor shall be reimbursed for the reasonable costs and expenses, including attorney's fees, incurred in connection with the defense of any contest of this Will. Such reimbursement shall be made from my estate. Villeda Law Group or any successor of such firm, its lawyers including Antonio Villeda, Christopher Cheatham and staff, including Cindy Curry, and any of the aforesaid persons, whether they are working as lawyers/paralegals at that time or not, shall also be paid for all time including time to prepare for any deposition or hearing (at their most recent billable rates or if they are retired or no longer working in the legal field, at the then prevailing rates of attorneys and paralegals with their experience) and all expenses any of them may incur including travel and lodging expenses, in any proceeding relating in any way to this document, the Statutory Durable Power of Attorney, the Durable Power of Attorney for Health Care, the Directive to Physicians or the Agreement dated August 9, 2018 regarding contractual wills or any other document prepared or used in connection to this testamentary representation. Such fees and expenses shall be paid from such contesting beneficiary's share (if any) of my estate prior to distribution and in the event such contesting beneficiary's share is not sufficient to pay for all such fees and expenses the estate shall pay for such fees and expenses from the residue of this estate.

## IV.    DISCUSSION

Villeda's argument is twofold: (1) there was a valid agreement containing an enforceable arbitration clause, which he may enforce pursuant to the doctrine of direct-benefits estoppel; and (2) the claims here fall under the broad scope of the arbitration clause. Because the first argument is dispositive, we need not address the latter. *See*

TEX. R. APP. P. 47.1.

**A.     *Rachal v. Reitz***

In *Rachal*, the Texas Supreme Court determined whether an arbitration provision in a trust was "enforceable against trust beneficiaries." *See* 403 S.W.3d at 842. The Court applied direct-benefits estoppel against a non-signatory beneficiary of a trust who sued the trustee. 403 S.W.3d at 847–48. The non-signatory beneficiary alleged that the trustee violated his fiduciary duty and violated the terms of the trust by converting trust assets, resulting in a material financial loss to the trust. *Id.* The court held that the non-signatory "beneficiary's acceptance of the benefits of the trust and [his] *suit to enforce its terms* constituted the assent required to form an enforceable agreement to arbitrate." *Id.* at 842 (emphasis added). The court also stated that "a beneficiary who attempts to enforce rights that would not exist without the trust manifests her assent to the trust's arbitration clause." *Id.* at 847. The court further considered the non-signatory beneficiary's allegations that the trustee had materially violated the terms of the trust; violated his fiduciary duty to the non-signatory beneficiary; and violated the terms of the trust. *Id.* According to the supreme court, because the non-signatory accepted the benefits of the trust and sued to enforce the terms of the trust, he accepted the terms and validity of the trust, including the arbitration clause. *Id.* Thus, the non-signatory beneficiary was compelled to arbitrate under the theory of direct-benefits estoppel. *Id.* at 842.

**B.     *Ali v. Smith***

In *Ali v. Smith*, the court of appeals relied on *Rachal* to reach the conclusion that direct-benefits estoppel did not permit the former executor of the decedent's estate to compel arbitration against the non-signatory beneficiary. 554 S.W.3d at 762. In that case,

6

Smith was the successor executor and sought claims against Ali, the former independent executor, alleging that he failed to responsibly handle the finances of the estate, converted assets of the estate, and used estate funds in violation of his fiduciary duties. *Id.* at 757. Ali filed a motion to compel based on an arbitration provision contained in the will, which the trial court denied. *Id.*

On appeal, Ali argued that the arbitration provision was enforceable under the doctrine of direct-benefits estoppel because Smith, the executor, "enforced the will" and brought claims against Ali "for failing to comply with the will." *Id.* at 759. Thus, the appellate court determined whether the direct-benefits estoppel doctrine applied to the executor of a will. Following *Rachal*, the appellate court considered the executor's allegations as the court did in *Rachal*, namely, that Ali failed to responsibly handle the estate's finances; converted assets of the estate for personal use; and used estate funds inappropriately. *Id.* at 761. The court stated that "[u]nlike the beneficiary in *Rachal* who alleged violations of the trust terms, [the executor] does not allege in the petition that Ali violated any terms of the will. Rather, [the executor] contends that her claims are based on common law and statutory provisions." *Id.*; *see also* TEX. EST. CODE ANN. § 351.001 (providing that the duties of executors and administrators are governed by common law principles). As the original executor, Ali had a statutory duty to deliver the estate to Smith as his successor, *see id.* § 351.102(b), and Smith sued pursuant to § 361.153, *see id.* § 361.153(b) (providing that a successor representative is "entitled to any order or remedy that the court has the power to give to enforce the delivery of the estate property" to the successor representative).

Quoting the supreme court, the appellate court stated: "[W]hen the substance of

the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties . . . direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence." *Ali*, 554 S.W.3d at 760 (quoting *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 637 (Tex. 2018)). The appellate court held that the theory of the direct-benefits estoppel was inapplicable because the executor did not allege that Ali violated any terms of the will. *Id.* at 762. It added that "if [the executor's] petition is unclear about whether Ali's liability will be determined by reference to the will, the trial court did not err by concluding that Ali failed to meet his burden to show the existence of an arbitration agreement that is enforceable against Smith." *See id.* at 762–763 (collecting cases holding the defendant failed to prove arbitrability based on the direct-benefits estoppel).

## C. Application of Direct-Benefits Estoppel

For purposes of this appeal, we will assume—but not decide—that appellants are "all other parties interested or claiming an interest" in Benito's estate, such that they may enforce the arbitration provision at issue here. There is a dearth of authority as to the validity of an arbitration provision in a will but none as to how it relates to an attorney representing a beneficiary. Therefore, we find the reasoning in *Rachal* and *Ali* instructive here. "When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims." *Rachal*, 403 S.W.3d at 850. In their petitions, Rene and Noe, the non-signatory beneficiaries, accused Villeda of failing to exercise reasonable care when he failed to include the partition language in the special warranty deed, resulting in Rene not receiving the eastern portion of Lot 390. They allege Villeda, in his capacity as attorney for the executor, negligently omitted a material clause

8

in the special warranty deed, failed to correct the error pursuant to Noe's request, failed to correct the special warranty deed again pursuant to Rene's request, failed to inform Noe of Rene's demand, and changed Noe's discovery responses without communicating or obtaining Noe's permission. According to the petitions, because of these mistakes, Joel and Ricardo began costly litigation proceedings attempting to partition Lot 390 in value rather than in kind, which appellees have had to defend in both the probate court and district courts, resulting in attorney's fees.

Like the claims asserted in *Ali*, the substance of the non-signatory beneficiaries' claims against Villeda—namely, legal malpractice—arises from general obligations imposed by common law and statute. *See* 554 S.W.3d at 762. To prevail on a legal malpractice claim, the plaintiff must prove (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered damages. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). A legal malpractice plaintiff must prove that the lawyer's negligence was the proximate cause of cognizable damage, which consists of cause-in-fact and foreseeability. *See id.* at 122. Thus, the source of the lawyer's power to act is the statutes and the courts. *See* TEX. GOV'T CODE ANN. § 81.101 (defining the term "practice of law" to include acting on behalf of a client and explaining the scope of attorney authority). At issue in the claims against Villeda is his conduct in the practice of law and his duty to the independent executor; there is no allegation that Villeda violated any terms of the will in a role such as independent executor, trustee, or otherwise. As the supreme court explained in *Jody James* when it rejected a direct-benefits estoppel assertion, "[a] fiduciary duty generally arises from the relationship of the parties and not

9

from the contract." 547 S.W.3d at 638. Thus, the fiduciary duty that Villeda owes to Noe arises solely from his relationship with him and his role as legal counsel. *See id.*

Unlike those claims in *Rachal* wherein the non-signatory accepted the benefits of the trust and sued to enforce *the terms of the trust*, here the non-signatory beneficiary brothers are not suing appellants to enforce the terms of the will as they do not allege that he violated any terms of the will or any duty to the estate. *Cf. Rachal*, 403 S.W.3d at 847 (finding that the non-signatory beneficiaries were suing "for breach of fiduciary duty seek[ing] to hold the trustee to her obligations under the instrument"). Appellant argues that "liability arises from the will and must be determined by reference to it," but appellees are not suing to enforce the will or any of its terms—and there is no dispute as to the actual directives contained in the will—instead, they sue based on Villeda's alleged failures in legal representation. *Cf. Ali*, 554 S.W.3d at 762 (finding direct benefits estoppel is inapplicable when will violations are not alleged). Thus, the breach of fiduciary claim here is not to hold any person accountable under the will itself, as it was in *Rachal*. *See id.* Instead, like in *Ali*, the legal malpractice claim stands independently, irrespective of the will, concerning Villeda's duties and obligations to prepare a deed and represent his client.

Lastly, even if we assume that the non-signatory beneficiaries' petitions are unclear about whether Villeda's liability will be determined by reference to the will, we join our sister court to conclude that "the trial court did not err by concluding that [appellant] failed to meet his burden to show the existence of an arbitration agreement that is enforceable against [appellees]." *See Ali*, 554 S.W.3d at 762. Accordingly, we hold the doctrine of direct-benefits estoppel does not apply to enforce the arbitration clause

10

against appellees, and we overrule appellants' sole issue.[1]

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA<br>
Chief Justice

Delivered and filed on the
23rd day of October, 2025.

---

[1] Appellants alternatively argue that "for the additional reason that Benito's will was itself contractual, the necessary mutual assent exists to enforce the arbitration clause." Although appellants delve into the doctrine of contractual wills as it applies to testators and beneficiaries, appellants do not explain or provide us any authority how this doctrine applies to non-signatories or how it provides the required mutual assent other than his general assertion that it does. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001 (requiring a written agreement to arbitrate between the parties); TEX. R. APP. P. 38.1(i). We therefore decline to address this additional argument due to inadequate briefing. See TEX. R. APP. P. 38.1(i).